**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| TDY INDUSTRIES, LLC, § | |
| Plaintiff, § | |
| § | |
| v. § | NO. 2:18-cv-00296-SWS-MLC |
| § | |
| BTA OIL PRODUCERS, LLC, § | |
| Defendant. § | |
| § | |

**TDY'S MOTION TO COMPEL PRODUCTION OF DOCUMENT FROM BTA**

TDY Industries, LLC ("**TDY**") moves to compel BTA Oil Producers, LLC ("**BTA**") to produce the only document BTA withheld as privileged between it and Kelly Hart & Hallman, LLP ("**KHH**"). KHH is the law firm that has advised BTA on title with respect to the Disputed Oil and Gas Rights since, at least, July 2015, and BTA has waived any privilege between it and KHH by voluntarily producing every other document between it and KHH and relying on many to support its positions.

## I.   INTRODUCTION AND SUMMARY

1.   This case centers on Disputed Oil and Gas Rights that Borax sold to Continental American Royalty Company ("**CARCO**") in 1968 pursuant to the Escrow Agreement and the Agreement Supplemental to the Escrow Agreement. Title to the Disputed Oil and Gas Rights was transferred to a TDY predecessor in 1972 when it acquired substantially all of CARCO's assets.

2.   In 2014, BTA leased a portion of the Disputed Oil and Gas Rights from TDY. In 2015, BTA approached TDY about leasing additional portions of the Disputed Oil and Gas Rights. In connection, BTA hired William "Bill" Burford of KHH to review title and advise it on same. Mr. Burford and KHH reviewed the publicly-available record for BTA and opined that it found a gap in title. BTA shared these communications with TDY and its agent, including Mr. Burford's emails containing legal advice to BTA employees, Mr. Burford's legal memorandum to BTA, and

Mr. Burford's title opinions. BTA disclosed those communications, memorandums, and title opinions when trying to persuade TDY to get a quit-claim deed from Borax in 2015 and 2016. When TDY did not, BTA had Mr. Burford revise the title opinions and his conclusions to vest title in Borax so that BTA could approach Borax to purchase the 2016 Quit Claim Deed and the 2017 Quit Claim Deed.

3. BTA produced some of these documents to TDY and/or its agent before this litigation was commenced. And, after TDY sued BTA, BTA has further put KHH materials in issue. BTA has now produced all communications, materials, and documents between it and KHH, including title opinions, legal analysis memorandums on TDY's adverse possession, emails, and other items *except one*, a November 15, 2017 document that BTA now seeks to protect as privileged and shield from disclosure ("**11.15.17 Doc**") according to its Amended Privilege Log. *See* Exhibit 2.

4. As more fully explained below, under applicable Federal and New Mexico Rules, BTA has waived any privilege as to the 11.15.17 Doc for three reasons. *First*, BTA intentionally disclosed all other KHH documents and communications before and after the dispute emerged and/or the litigation was filed. Since the litigation was commenced and documents were produced, BTA has produced every other KHH document, has not attempted to protect or claw back any other KHH document, and has, instead affirmatively and offensively used the KHH documents in litigation.

5. *Second*, the undisclosed and disclosed KHH documents concern the same subject matter: title to the Disputed Oil and Gas Rights. Applicable law provides the Court grounds to compel a party to produce any withheld documents when the party has intentionally produced, and used, other documents concerning the same subject matter.

6. ***Third***, in fairness, the 11.15.17 Doc should be considered in context with all other KHH materials. BTA is using KHH materials offensively in discovery and otherwise to claim, among other things, that TDY does not have title, that BTA was an innocent purchaser, and that TDY should be estopped from now claiming ownership. In fact: (1) BTA has used the KHH materials in the deposition of TDY's corporate representative; and (2) BTA has designated Mr. Burford as an expert on: (i) his various (and changing) title opinions, (ii) the reasonableness of his decision to offer different conclusions as to title of the Disputed Oil and Gas Rights; and (iii) that BTA has superior title to the Disputed Oil and Gas Rights. BTA only wants to protect and guard the information in a singular document as privileged.

7. The applicable rules do not allow BTA to produce and rely upon all other KHH materials while simultaneously shielding a singular document as privileged. And, the Court should not allow BTA's attempts to do so as it perpetrates an injustice on TDY while BTA uses KHH materials as a sword and a shield.

## II.  PROCEDURAL HISTORY

8. On June 21, 2018, TDY served its First Set of Expedited Requests for Production to BTA. Exhibit A. BTA responded on July 13, 2018 without simultaneously serving a privilege log under FED. R. CIV. P. 26(b)(5)(A). *Id*.

9. On July 9, 2018, TDY served its Second Set of Expedited Requests for Production to BTA. *Id.* BTA responded on July 20, 2018 without simultaneously serving a privilege log. *Id*.

10. On July 18, 2018, BTA sent a snap-back notice under Federal Rule of Civil Procedure 26(a)(5)(B) ("**Snap-Back**"). Exhibit 1. The Snap-Back clawed back five documents. According to BTA's Amended Privilege Log, one of the clawed-back documents is the 11.15.17 Doc. Exhibit 2.

11. On August 7, 2018, TDY formally requested a privilege log from BTA because BTA had not provided a privilege log under Federal Rule of Civil Procedure 26(b)(5)(A). Exhibit 3. On August 7, 2018, BTA assured TDY that it would produce a privilege log the following week. *See id.* ("I will look at your proposed stip and get you a priv log next week.").

12. On August 16, 2018, TDY served its Interrogatories and Third Requests for Production to BTA. Exhibit A. Again, BTA responded on September 17, 2018 without serving a privilege log. *Id.*

13. TDY did not receive a privilege log the week of August 14, 2018 as BTA promised. On August 20, 2018, TDY again asked BTA for a privilege log. Exhibit 3. BTA assured TDY that it would produce a privilege log on August 21, 2018. *See id.* BTA did not produce a privilege log on August 21, 2018. After numerous emails and telephone calls from TDY to BTA following up on the privilege log, BTA finally produced a three-page privilege log on September 19, 2018. *See* Exhibit A, ¶ 3.

14. Less than one week after receiving BTA's privilege log, the conference concerning the 11.15.17 Doc began. On September 24, 2018, TDY notified BTA that BTA had waived privilege as to the 11.15.17 Doc—which was the ***only*** KHH document on BTA's privilege log—based on the production of all other KHH documents. Exhibit 4. Specifically, TDY told BTA that the repeated voluntary disclosure of communication and information transmitted between KHH and BTA had waived any privilege that might have existed over the one withheld communication, and TDY requested that BTA produce the 11.15.17 Doc. *Id.*

15. On September 25, 2018, BTA generically noted disagreement with TDY's position but asked for case law to consider whether the document should be produced. TDY responded with case law on September 27, 2018. *Id.* BTA did not timely respond.

16. On October 15, 2018, TDY subpoenaed KHH for its documents. Exhibit A. BTA objected to KHH producing the 11.15.17 Doc and made it clear that it considered *only* the 11.15.17 Doc between KHH and BTA privileged. *See* Exhibit 5. Again, TDY and BTA discussed BTA's subject-matter waiver via email from October 12, 2018 to October 17, 2018 and then from October 25, 2018 to October 26, 2018 as BTA continued to refuse to produce the 11.15.17 Doc. *See id*.

17. TDY partially received KHH's production on November 30, 2018, the next batch of KHH documents on December 7, 2018, and another production of KHH documents on December 14, 2018. Exhibit A, ¶ 3. At this time, it is TDY's understanding that BTA has completed the production of KHH documents and has failed to produce the 11.15.17 Doc. Accordingly, this discovery issue is now ripe for the Court's determination.

### III. RELEVANT FACTUAL BACKGROUND

18. In response to TDY's discovery requests, BTA has voluntarily produced most, if not all,[1] other KHH Documents except the 11.15.17 Doc, and BTA has placed KHH materials as central to this dispute by relying on KHH Title Opinions, using KHH materials offensively, and designating as an expert the KHH attorney who advised BTA on title issues related to the Disputed Oil and Gas Rights.

#### A. KHH Drafted Title Opinions for the Disputed Oil and Gas Rights, which BTA Has Produced and Relied Upon.

19. BTA engaged KHH to draft title opinions concerning the Disputed Oil and Gas Rights, and KHH has issued seven title opinions (collectively, the "**KHH Title Opinions**") that divulge KHH's legal opinions and analysis related to the Disputed Oil and Gas Rights, suggest curative requirements, and provide legal advice to BTA. *See* Exhibit A, ¶ 4. For example, the April 6, 2016 Title Opinion advises BTA to obtain a quit claim deed from U.S. Borax, Inc. to TDY

---

[1] To the best of TDY's understanding, BTA has produced all other KHH documents.

over a portion of the Disputed Oil and Gas Rights.  *See* Exhibit 6.  The KHH Title Opinions were privileged communications from KHH to BTA **that BTA voluntarily and intentionally produced**.

      **B.**      **BTA Has Voluntarily Produced Most, If Not All, Other KHH Documents.**

      20.      BTA has voluntarily produced most, if not all, other KHH documents, communications, and memorandums, including memorandums that disclose legal advice from KHH to BTA.  Specifically, BTA has disclosed a legal memorandum from KHH to BTA that analyzes title.  *See* Exhibit 7.  And, BTA has produced communications that specifically provide legal advice even after BTA had hired litigation counsel.  *See* Exhibits 8-9.

      21.      Below is a list of KHH material that was authored before, contemporaneously with, and after the 11.15.17 Doc that BTA has intentionally produced in this case, some of which BTA has used offensively in this litigation:

|   | **DOCUMENT** | **DATE** | **STARTING BATES #** |
|---|---|---|---|
| 1. | Letter from BTA to KHH Requesting a Title Opinion | July 1, 2015 | BTA-000600 |
| 2. | KHH Title Opinion 1 | July 31, 2015 | BTA-011460 |
| 3. | Email Thread Between BTA and KHH Discussing Title | August 5-6, 2015 | BTA-007089 |
| 4. | Email from BTA to KHH about Title Documents from Chevron | November 12, 2015 | BTA-007086 |
| 5. | KHH Title Opinion 2 | November 13, 2015 | BTA-000279 |
| 6. | Memorandum from KHH to BTA Analyzing Title and Summarizing Legal Issues | November 19, 2015 | BTA-004840 |

| | | | |
|---|---|---|---|
| 7. | KHH Title Opinion 3 | April 5, 2016 | BTA-007981 |
| 8. | KHH Title Opinion 4 | April 6, 2016 | BTA-000273 |
| 9. | Letter from KHH to BTA Advising BTA About the Disclaimer to Title | May 27, 2016 | BTA-012346 |
| 10. | Email from BTA to KHH Regarding Closing with Borax | December 12, 2016 | BTA-001215 |
| 11. | Email from BTA to KHH Requesting Title Opinion | May 1, 2017 | BTA-012537 |
| 12. | Email from BTA to KHH Discussing the Land Containing the Disputed Oil and Gas Rights | June 8, 2017 | BTA-012523 |
| 13. | KHH Title Opinion 5 | August 21, 2017 | BTA-000207 |
| 14. | KHH Title Opinion 6 | November 9, 2017 | BTA-004745 |
| 15. | Email from BTA to KHH Forwarding TDY's 11.16.17 Letter | November 16, 2017 | BTA-007197 |
| 16. | Email from BTA to KHH Scheduling Phone Call about TDY | November 16, 2017 | BTA-007248 |
| 17. | Email from BTA to KHH Requesting KHH Prepare the Assignment of Claims | November 27, 2017 | BTA-012545 |
| 18. | Email from BTA to KHH Telling KHH that Borax Won't Sign the Officer's Certificate | November 30, 2017 | BTA-007711 |
| 19. | KHH Title Opinion 7 | December 18, 2017 | BTA-000228 |
| 20. | Email from KHH to BTA Disclosing Call between KHH and TDY's Counsel | February 14, 2018 | BTA-005285 |

22.     The type of documents that have been produced, including documents expressly advising BTA on the title issues related to the Disputed Oil and Gas Rights, and the fullness of the production is telling with respect to BTA's decision to waive privilege.  According to BTA's privilege log, it has produced *all other* responsive documents and communications between BTA and KHH but withheld one, the 11.15.17 Doc, on the same subject matter.  *See* Exhibit 2.  BTA's disclosure of at least twenty documents bars it from claiming that the only remaining document on the same subject matter somehow retains its status as privileged.

**C.     Bill Burford from KHH Has Been Designated an Expert, and Other Experts Rely on Burford's Title Opinions.**

23.     On November 14, 2018, BTA designated Bill Burford, the Escrow Agent in the Borax Deal, the attorney that drafted the KHH Title Opinions, and the primary contact between BTA and KHH, as a non-retained expert to opine on title to the Disputed Oil and Gas Rights. Exhibit 10.  According to BTA, Mr. Burford is "expected" to testify:

- "in support of his revised title opinions dated April 5, 2016 and April 6, 2016," Ex. 10, p. 2;
- "about his prior title opinions and the reasons for the revisions in his opinions identified here," Ex. 10, p. 2;
- "about his role in BTA's purchases represented by the 2016 Mineral Deed and the 2017 Mineral Deed which are the subject of this civil action," Ex. 10, p. 2;
- "that his title opinions are reliable, BTA holds title of record to the [Disputed Oil and Gas Rights], and BTA owns the Disputed Mineral Interests," Ex. 10, p. 2;
- "(c) underlying transaction documents merged into conveyance instruments," Ex. 10, p. 2–3;
- "(d) unrecorded letters without a property description, which refer to a correction deed, supplemental mortgage, or other instrument which cannot be found," Ex. 10, p. 3; and
- "that a competent mineral title examiner reviewing matters of record in the real property records of Eddy County New Mexico and the communication between BTA and TDY in 2015-2016 would conclude that the successor to United States Borax and Chemical Corporation ("Borax") had title to the Disputed Oil and Gas Rights immediately prior to the assignments thereof fo BTA, that TDY did not have color of title to any of those Disputed Oil and Gas Rights when BTA acquired those

rights and that oil and gas leases executed by TDY over portions of the Disputed Oil and Gas Rights represent TDY's claims clouding Borax's (and now BTA's) title," Ex. 10, p. 3.

24. BTA's other expert, Jeffrey Hewett, is an expert that BTA retained to support Mr. Burford and his conclusions. *See* Exhibit 10, pp. 6–8.

## IV. AUTHORITIES

25. In diversity cases, the state law governs the scope of the attorney-client privilege and whether it has been waived. *Certain Underwriters of Lloyd's v. Old Republic Ins. Co.*, No. 13-701- KG/KK, 2015 WL 12748248, at *7 (D.N.M. Aug. 18, 2015). "Waiver of the attorney-client privilege occurs, *inter alia*, when a party directly relies on an attorney-client communication to advance a claim or defense." *See id.* (citing *Gingrich v. Sandia Corp.*, 165 P.3d 1135, 1440 (N.M. Ct. App. 2007) (defendant waived attorney-client privilege as to an investigated report that its attorney had prepared). "In New Mexico, this type of waiver, known as "at issue" waiver, requires the client to make 'offensive or direct use of privileged materials.'" *Id.* (citations omitted).

26. Moreover, under New Mexico law, the Court may in its discretion determine the scope of the waiver in fairness. *Id.* at *10. "Once a privilege has been waived, 'the resulting scope of that waiver is a question addressed to the discretion of the district court.'" *Id.* (citing *Gingrich*, 165 P.3d at 1141). "The decision of whether the waiver applies only to the actual communication disclosed or to additional communications that substantively relate to it is a discretionary one, based upon the judge's assessment of what is fair under the circumstances." *Gingrich*, 165 P.3d at 1141.

27. The Federal Rules are informative and similarly uphold fairness. Federal Rule of Evidence 502(a) ("**Rule 502**") reads in pertinent part:

> **(a) Disclosure Made in a Federal Proceeding. . .;Scope of a Waiver.** When the disclosure is made in a federal proceeding . . . and waives the attorney-client

> privilege or work-product protection, the waiver extends to an undisclosed communication . . . if:
>
> **(1)** the waiver is intentional;
>
> **(2)** the disclosed and undisclosed communications or information concern the same subject matter; and
>
> **(3)** they ought in fairness to be considered together.

FED. R. EVID. 502(a).

28. "[T]here is substantial case law supporting the position that as a matter of law, any voluntary waiver of confidential communications waives the privilege as to all confidential communications regarding the same subject matter." *Murray v. Gemplus Int'l*, 217 F.D.R. 362, 366 (E.D. Pa. 2003); *Nguyen v. Excel Corp.*, 197 F.3d 200, 207, n. 17 (5th Cir. 1999) (affirming a district court's finding of waiver where executives recounted communications with attorneys in depositions); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 462 (S.D.N.Y. 1996) (finding waiver where an "85-page report for [a client] summarize[ed] in detail the facts uncovered by the law firm in the course of its investigation"); *Gingrich v. Sandia Corp.*, 165 P.3d 1135, 1141–42 (

29. "[S]ubject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading, and unfair manner." FED. R. EVID. 502(a), explanatory n. The doctrine of subject-matter waiver is strongest in cases of selective disclosure. *See Belmont Holdings Corp. v. Suntrust Banks, Inc.*, No. 1:09-CV-1185-WSD, 2012 WL 6430598, at *5 (N.D. Ga. Nov. 19, 2012) (selective introduction of certain testimony in pleadings and in opposition to dismissal and sanctions compelled "further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary.").

30. Subject matter waiver is also consistent with the long-standing approach that a litigant may not use the attorney-client privilege as both a sword and a shield. *See generally Motley*

*v. Marathon Oil Co.*, 71 F.3d 1547, 1552 (10th Cir. 1995) ("To be sure, there is some authority that attorney-client communications cannot be used both as a sword and a shield, as when a party defends the conduct which is the subject of the suit by relying on the advice of counsel"). "[W]hen a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005). Rule 502 seeks to uphold fairness in this context. *See Doe 1 v. Baylor University*, 320 F.R.D. 430, 440 (W.D. Tex. 2017) ("[F]airness is the critical consideration when evaluating whether a party has waived the attorney-client privilege.").

31. Additionally, "[d]isclosure of any significant portion of a confidential communication is enough to waive the privilege as a whole." *Id.* (citing *Nguyen*, 197 F.3d at 208). "It is thus unnecessary to determine whether [the resisting party] put its privileged communications directly at issue in the instant case. It is enough that [the resisting party] selectively disclosed confidential attorney-client communications publicly to warrant a finding that it waived the attorney-client privilege with respect to those communications as whole." *Id.*

32. And, Federal Rule of Civil Procedure 37 authorizes a party to move for an order compelling discovery after good faith conference with the party failing to make discovery when the responding party fails to produce documents or when a deponent fails to answer a question, among other things. FED. R. CIV. P. 37.

33. Under the applicable Federal and New Mexico Rules, TDY moves the Court to compel BTA to produce the one KHH Document it is withholding as privileged to TDY, or in the alternative, to present the KHH Document to the Court for an *in camera* review to determine whether "it would be fair to allow [BTA] to protect remaining undisclosed details regarding

[KHH's legal analysis on title to the Disputed Oil and Gas Rights] when it intentionally, publicly, and selectively released certain details of [KHH's opinions], including attorney-client communications." *See Doe 1*, 320 F.R.D. at 440.

## V. ARGUMENT

### A. BTA Intentionally Produced All Other KHH Documents.

34. BTA has produced extensive amounts of KHH documents while claiming that only one is privileged. BTA's production of these documents was intentional because BTA carefully reviewed its production, conducted a re-review of its documents, and clawed back some documents (including the 11.15.17 Doc) but left all other documents between it and KHH in its production. *See* Exhibit A and Exhibit 2.

35. By voluntarily producing privileged documents concerning KHH's legal analysis as to ownership, title, and potential claims in litigation, BTA has waived the attorney-client privilege and work-product protection as to all KHH communication concerning KHH's investigations into title and advice on same, which includes the 11.15.17 Doc. *Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 470-72 (N.D. Cal. 2012) (citing Fed. R. Evid. 502(a)).

### B. The Disclosed and Undisclosed KHH Documents Concern KHH's Advice and Opinions on Title to the Disputed Oil and Gas Rights.

36. It is easy to conclude that the 11.15.17 Doc relates to KHH's opinions on title to the Disputed Oil and Gas Rights for two reasons.

37. First, BTA had a specific scope of engagement with KHH that directly relates to title to the Disputed Oil and Gas Rights. Specifically, BTA engaged KHH "to examine mineral title and render a mineral title opinion on all of the lands the [sic] subject of the Disputed Oil and

Gas Rights and to provide recommended courses of action for curing title . . . and to summarize the issues to expect." Exhibit 11.

38. Second, the disclosed communications immediately surrounding the undisclosed communication refer to title of the Disputed Oil and Gas Rights and seek KHH's advice on same. The two emails on November 16, 2017 reference TDY's claim to title of the Disputed Oil and Gas Rights and schedule a phone call between BTA, KHH, and Borax to discuss next steps. *See* Exhibits 12 and 13. The content of the phone call between BTA, KHH, and Borax would have concerned TDY and KHH's thought processes on TDY's claims. And, shortly thereafter, KHH and BTA discuss an Assignment of Claims and Officer's Certificate from Borax, which are the agreements BTA sought in anticipation of litigation over title with TDY. *See* Exhibits 14 and 15. The 11.15.17 Doc does not enjoy privilege now that BTA looped Borax into its communications with BTA. *See In re Steinhardt Partners, LP*, 9 F.3d 230, 235 (2d Cir. 1993) ("Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears.").

39. Of course, if there is any doubt or question as to the validity of the above, the Court can (and TDY would respectfully submit should) review the 11.15.17 Doc *in camera*.

### C. In Fairness, the One Withheld KHH Document Must be Considered with the Other KHH Documents.

40. It would not be fair to allow BTA to protect one undisclosed document when it intentionally and selectively released certain details of Burford's legal opinions, including attorney-client communications. *See Doe 1*, 320 F.R.D. at 440. BTA "should not be allowed to pick and choose which privileged communications to disclose to obtain a tactical advantage over" TDY. *See Nalco Co., Inc. v. Baker Hughes, Inc.*, No. 4:09-CV-1885, 2017 WL 3033997, at *5 (S.D. Tex. July 18, 2017).

41.     BTA has used other KHH documents offensively in discovery and for other purposes.  Specifically, BTA has relied upon KHH communications and KHH Title Opinions in its pleadings and when deposing TDY's corporate representative.  *See e.g.,* Exhibits 4, 8, 11, and 19 to Defendant BTA Oil Producers, LLC's Response to Plaintiff's Motion for Preliminary Injunction [Dkt. 29]; *see also* Exhibit 16, which is Exhibit 64 to the Deposition of TDY (Rose Marie Manley).

42.     Additionally, BTA designated two experts to offer title opinions: (1) Bill Burford from KHH; and (2) Jeffrey D. Hewett, and both of BTA's experts rely upon KHH materials, including KHH Title Opinions.  Exhibit 10.  Bill Burford is designated to testify on the correctness of BTA's position and that BTA has superior title to the Disputed Oil and Gas Rights using his experience and the work he performed on this matter **while at the same time BTA attempts to hide the 11.15.17 Doc, which is Mr. Burford's advice on the very same issues**.

43.     BTA has placed KHH's Title Opinions, and KHH's legal advice on TDY's ownership of the Disputed Oil and Gas Rights, directly at issue in this litigation.  There is little doubt of the unfairness of BTA's decision to selectively disclose and rely upon 99% of KHH materials in discovery, pleadings, and through its experts but withhold a single document concerning the same topic.  Rather, this is the seminal situation when subject-matter waiver applies.  *See Doe 1*, 320 F.R.D. at 442 ("Subject-matter waiver is generally limited to instances where the quality and substance of an attorney's work product have been directly placed at issue in the litigation by the party asserting the privilege.").

WHEREFORE, TDY moves the Court to compel BTA to produce the KHH Document to TDY, or, in the alternative, compel BTA to produce the KHH Document to the Court for *in camera*

review and grant TDY all such other and further relief to which BTA may show itself to be justly entitled.

Dated: December 19, 2018      Respectfully submitted,

*/s/ Skyler M. Howton*
John R. Hardin
JohnHardin@perkinscoie.com
Skyler M. Howton
SHowton@perkinscoie.com
**PERKINS COIE LLP**
500 N. Akard Street, Suite 3300
Dallas, TX 75201
Tel. (214) 965-7743
Fax (214) 965-7793

Pete V. Domenici, Jr.
pdomenici@domenicilaw.com
Lorraine Hollingsworth
lhollingsworth@domenicilaw.com
**DOMENICI LAW FIRM, P.C.**
320 Gold Street SW, Suite 1000
Albuquerque, NM 87102
Tel. (505) 883-6250
Fax (505) 884-3424

**ATTORNEYS FOR PLAINTIFF TDY INDUSTRIES, LLC**

## CERTIFICATE OF CONFERENCE

Counsel for movant and respondent have personally conducted a conference at which there was a substantive discussion of every item present to the Court in this Motion and, despite best efforts, have been unable to resolve those matters presented.

Certified to on December 19, 2018

*/s/ Skyler M. Howton*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served upon all counsel of record pursuant to the Federal Rules of Civil Procedure on December 19, 2018.

/s/ Skyler M. Howton